**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| LEVI STRAUSS & CO.,<br><br>         Plaintiff,<br><br>   v.<br><br>THE PARTNERSHIPS and<br>UNINCORPORATED ASSOCIATIONS<br>IDENTIFIED ON SCHEDULE "A",<br><br>         Defendants. | Case No. 20-cv-04380 |

**COMPLAINT**

Plaintiff Levi Strauss & Co. ("LS&Co.") hereby brings the present action against the Partnerships and Unincorporated Associations identified on Schedule A attached hereto (collectively, "Defendants") and alleges as follows:

**I. JURISDICTION AND VENUE**

1.    This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331.

2.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through at least the fully interactive, e-commerce stores[1] operating under the seller aliases identified in Schedule A attached hereto (the "Seller Aliases").  Specifically, Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States

---

[1] The e-commerce store urls are listed on Schedule A hereto under the Online Marketplaces.

consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, have sold products using infringing and counterfeit versions of LS&Co.'s federally registered trademarks to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused LS&Co. substantial injury in the State of Illinois.

## II. INTRODUCTION

3.      This action has been filed by LS&Co. to combat e-commerce store operators who trade upon LS&Co.'s reputation and goodwill by offering for sale and/or selling unauthorized and unlicensed products, including jeans, jean jackets, and other apparel items, using infringing and counterfeit versions of LS&Co.'s federally registered trademarks (the "Counterfeit Levi's Products"). Defendants create e-commerce stores operating under one or more Seller Aliases that are advertising, offering for sale and selling Counterfeit Levi's Products to unknowing consumers. E-commerce stores operating under the Seller Aliases share unique identifiers establishing a logical relationship between them and that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identities and the full scope and interworking of their counterfeiting operation. LS&Co. is forced to file this action to combat Defendants' counterfeiting of its registered trademarks, as well as to protect unknowing consumers from purchasing Counterfeit Levi's Products over the Internet. LS&Co. has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademarks as a result of Defendants' actions and seeks injunctive and monetary relief.

2

## III. THE PARTIES

**Plaintiff**

4.      Plaintiff LS&Co. is a corporation organized and existing under the laws of the State of Delaware, having its principal place of business at Levi's Plaza, 1155 Battery Street, San Francisco, California 94111.

5.      Operating since the 1850s, LS&Co. is one of the oldest and best known apparel companies in the world.  It manufactures, markets and sells a variety of apparel, including its traditional LEVI'S® brand products, all of which are marked with a set of trademarks that are famous around the world.  LEVI'S® brand products have become enormously popular and even iconic, driven by LS&Co.'s arduous quality standards and innovative design.  Among the purchasing public, LEVI'S® brand products are instantly recognizable as such.  In the United States and around the world, the LEVI'S® brand has come to symbolize high quality, and LEVI'S® brand products are among the most recognizable apparel products in the world.

6.      LEVI'S® brand products are distributed and sold to consumers through retailers throughout the United States, including through authorized retailers in Illinois, the official levi.com website which was launched in 1994, and LEVI'S® Stores, including locations at 600 N. Michigan Avenue and 1552 N. Milwaukee Avenue in Chicago, Illinois.

7.      LS&Co. incorporates a variety of distinctive marks in the design of its various LEVI'S® brand products.  LEVI'S® brand products typically include at least one of the LEVI'S Trademarks.  Often several LS&Co. marks are displayed on a single LEVI'S® brand product. LS&Co. further uses its trademarks in connection with the marketing of its LEVI'S® brand products.  As a result of its long-standing use, LS&Co. owns common law trademark rights in its

trademarks.  LS&Co. has also registered multiple trademarks with the United States Patent and

Trademark Office.  Among the marks registered are the Levi's trademarks listed below.

| REGISTRATION NUMBER | TRADEMARK | REGISTRATION DATE | GOODS AND SERVICES |
|---|---|---|---|
| 1,140,011 | LEVI'S | September 30, 1980 | For garments-namely, pants, shirts, and shorts in class 025. |
| 1,124,018 | LEVI'S | August 14, 1979 | For purses, denim shopping bags, back packs, duffle bags, briefcase portfolios, key cases and wallets in class 018.<br><br>For belts, hats, caps, visors, and shoes in class 025. |
| 1,130,486 | LEVI'S | February 5, 1980 | For socks in class 025. |
| 4,660,979 | LEVI'S | December 23, 2014 | For underwear in class 025. |
| 250,265 | LEVI'S | December 4, 1928 | For jeans in class 025. |
| 581,610 | LEVI'S | October 27, 1953 | For men's, women's and children's overalls, jackets, outer shirts, slacks, and pants; skirts in classes 010, 025, 026. |
| 2,320,789 | LEVI'S | February 22, 2000 | For clothing, namely, men's, women's and children's pants, slacks, trousers, jeans, shorts, overalls, shirts, t-shirts, vests, skirts, jackets, coats, sweaters, sweatshirts, hats and shoes in class 025. |
| 849,437 | Levi's | May 21, 1968 | For trousers, jackets, shorts, shirts, skirts in classes 010, 025, 026. |

4

| 1,135,196 | | May 13, 1980 | For garments-namely, pants in class 025. |
| 928,351 | | February 1, 1972 | For men's, women's and children's pants, jackets in classes 010, 025, 026. |

8.     In addition to the above Levi's trademarks, LS&Co. has registered the famous Arcuate Stitching Design trademark, the Tab Device trademark, the Two Horse Design and Two Horse Label Design trademarks, and the 500 Series trademarks.

| LS&Co.'s Two Horse Label Design patch and 501 marks | LS&Co.'s Arcuate Stitching Design and Tab Device marks |
|---|---|



**LS&Co.'s Arcuate Trademark**

9.     The Arcuate Stitching Design trademark ("Accurate trademark") consists of a distinctive pocket stitching design that is the oldest known apparel trademark in the United States still in continuous use.  LS&Co. has used the Arcuate trademark continuously since 1873 in interstate commerce on clothing products.  LS&Co. first used the Arcuate trademark on jeans and later used it on other products, as well.

5

10.   LS&Co. owns, among others, the following United States Registrations for its Arcuate trademark.

| REGISTRATION NUMBER | TRADEMARK | REGISTRATION DATE | GOODS AND SERVICES |
|---|---|---|---|
| 404,248 | | November 16, 1943 | For waistband type overalls in class 025. |
| 1,139,254 | | September 2, 1980 | For pants, jackets, skirts, and shorts in class 025. |
| 2,794,649 | | December 16, 2003 | For pants, jeans, shorts, skirts, and jackets in class 025. |

11.   The Arcuate trademark is valid and protectable, and exclusively owned by LS&Co.  The Arcuate trademark is famous and is recognized around the world and throughout the United States by consumers as signifying authentic, high quality LEVI'S® brand products. The Arcuate trademark became famous prior to Defendants' conduct that is the subject of this Complaint.

**LS&Co.'s Tab Trademark**

12.   LS&Co.'s famous Tab Device Trademark (the "Tab trademark"), consists of a textile marker or other material sewn into one of the regular structural seams of the garment. LS&Co. uses the Tab trademark on LEVI'S® brand jeans and a variety of other clothing products.  LS&Co. began to display the Tab trademark on the rear pocket of its pants in 1936

6

when its National Sales Manager, Leo Christopher Lucier, proposed placing a folded cloth ribbon in the structural seams of the rear pocket. The purpose of this "tab" was to provide "sight identification" of LEVI'S® brand products. Given the distinctiveness of the Tab trademark, Mr. Lucier asserted that "no other maker of overalls can have any other purpose in putting a colored tab on an outside patch pocket, unless for the express and sole purpose of copying our mark, and confusing the customer."

13.    LS&Co. owns, among others, the following United States Registrations for its Tab trademark.

| REGISTRATION NUMBER | TRADEMARK | REGISTRATION DATE | GOODS AND SERVICES |
|---|---|---|---|
| 356,701 |  | May 10, 1938 | For pants of the patch-pocket type worn by men, women and children in class 025. |
| 516,561 |  | October 18, 1949 | For men's, women's and children's jeans and jackets in class 025. |
| 577,490 |  | July 21, 1953 | For jeans in class 025. |

| 720,376 |  | August 22, 1961 | For pants in classes 010, 025, 026. |
|---|---|---|---|
| 774,625 |  | August 4, 1964 | For garments, particularly trousers in class 025. |
| 775,412 |  | August 18, 1964 | For garments, particularly trousers in class 025. |
| 1,157,769 |  | June 16, 1981 | For trousers in class 025. |
| 2,726,253 |  | June 17, 2003 | For clothing, namely, shirts in class 025. |

14.    The Tab trademark is valid and protectable, and exclusively owned by LS&Co. The Tab trademark is famous and recognized around the world and throughout the United States by consumers as signifying authentic, high quality LEVI'S® brand products. The Tab trademark became famous prior to Defendants' conduct that is the subject of this Complaint.

15.    LS&Co. also has a trademark registration for a combination of the Arcuate trademark and the Tab trademark shown in the chart below.

| REGISTRATION NUMBER | TRADEMARK | REGISTRATION DATE | GOODS AND SERVICES |
|---|---|---|---|
| 2,791,156 |  | December 9, 2003 | For pants, jeans, shorts, skirts and jackets in class 025. |

**LS&Co.'s Two Horse Trademarks**

16.     LS&Co. has used its Two Horse Design and Two Horse Label Design trademarks (collectively, the "Two Horse trademarks") continuously since as early as 1886 in interstate commerce on jeans and pants.   LS&Co. owns, among others, the following United States Registrations for its Two Horse trademarks.

| REGISTRATION NUMBER | TRADEMARK | REGISTRATION DATE | GOODS AND SERVICES |
|---|---|---|---|
| 523,665 |  | April 11, 1950 | For men's, women's, boys', and girls' trousers in classes 010, 025, 026. |
| 1,044,246 |  | July 20, 1976 | For shoes in class 025. |
| 4,576,208 |  | July 29, 2014 | For jackets; jeans; pants; t-shirts; vests in class 025. |
| 1,030,033 |  | January 13, 1976 | For wallets in class 018. |

| 1,095,986 | | July 11, 1978 | For luggage-namely, back packs, shoulder bags, and purses in class 018.<br><br>For caps in class 025. |
|---|---|---|---|
| 1,140,853 | | October 28, 1980 | For garments-namely, pants, jackets, overalls and shoes in class 025. |

**LS&Co.'s 500 Series Trademarks**

17.     LS&Co. also owns the distinctive trademarks 501, 505, 517, and 569, among other marks that consist of three digits starting with a "5" (collectively, the "500 Series trademarks").  LS&Co. has used the 500 Series trademarks continuously since as early as 1983 in interstate commerce on jeans and pants and, by virtue of LS&Co.'s use and promotion of the 500 Series trademarks together, the public recognizes LS&Co. as the source of apparel products falling within the 500 series.

18.     LS&Co. owns, among others, the following United States Registrations for its 500 Series trademarks.

| REGISTRATION NUMBER | TRADEMARK | REGISTRATION DATE | GOODS AND SERVICES |
|---|---|---|---|
| 1,313,554 | 505 | January 8, 1985 | For pants in class 025. |
| 1,319,462 | 517 | February 12, 1985 | For pants in class 025. |
| 1,552,985 | 501 | August 22, 1989 | For jeans in class 025. |
| 2,503,976 | 569 | November 6, 2001 | For jeans and pants in class 025. |
| 4,053,137 | 550 | November 8, 2011 | For jeans; pants; shorts in class 025. |

19.     The U.S. trademark registrations discussed above shall collectively be referred to herein as the "LEVI'S Trademarks."  The LEVI'S Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065.  The LEVI'S Trademarks have been used exclusively and continuously by LS&Co., some since at least as early as 1873, and have never been abandoned.  The registrations for the LEVI'S Trademarks constitute *prima facie* evidence of their validity and of LS&Co.'s exclusive right to use the LEVI'S Trademarks pursuant to 15 U.S.C. § 1057(b).  Attached hereto as **<u>Exhibit 1</u>** are true and correct copies of the United States Registration Certificates for the LEVI'S Trademarks.

20.     The LEVI'S Trademarks are exclusive to LS&Co. and are displayed extensively on LEVI'S® brand products and in LS&Co.'s marketing and promotional materials.  LEVI'S® brand products have long been among the most popular jeans and apparel in the world and have been extensively promoted and advertised at great expense.  In fact, LS&Co. has expended millions of dollars annually in advertising, promoting and marketing featuring the LEVI'S Trademarks.  LEVI'S® brand products have also been the subject of extensive unsolicited publicity resulting from their high-quality, timeless designs and worldwide renown.  Because of these and other factors, the LEVI'S® brand and the LEVI'S Trademarks have become famous throughout the United States.

21.     The LEVI'S Trademarks are distinctive when applied to the LEVI'S® brand products, signifying to the purchaser that the products come from LS&Co. and are manufactured to LS&Co.'s quality standards.  Whether LS&Co. manufactures the products itself or licenses others to do so, LS&Co. has ensured that products bearing its LEVI'S Trademarks are manufactured to the highest quality standards.  The LEVI'S Trademarks have achieved tremendous fame and recognition, which has only added to the distinctiveness of the marks.  As

such, the goodwill associated with the LEVI'S Trademarks is of incalculable and inestimable value to LS&Co.

22.     Since at least as early as 1994, LS&Co. has operated a website where it promotes and sells LEVI'S® brand products at levi.com.  Sales of LEVI'S® brand products via the levi.com website represent a significant portion of LS&Co.'s business.  The levi.com website features proprietary content, images and designs exclusive to LS&Co.

23.     LS&Co.'s innovative marketing and product designs have enabled LS&Co. to achieve widespread recognition and fame and have made the LEVI'S Trademarks some of the most well-known marks in the apparel industry.  The widespread fame, outstanding reputation, and significant goodwill associated with the LEVI'S® brand have made the LEVI'S Trademarks valuable assets of LS&Co.

24.     LS&Co. has expended substantial time, money, and other resources in developing, advertising and otherwise promoting the LEVI'S Trademarks.  As a result, products bearing the LEVI'S Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from LS&Co.  LS&Co. is a multi-million-dollar operation, and LEVI'S® brand products have become among the most popular of their kind in the world.

**The Defendants**

25.     Defendants are individuals and business entities of unknown makeup who own and/or operate one or more of the e-commerce stores under at least the Seller Aliases identified on Schedule A and/or other seller aliases not yet known to LS&Co.  On information and belief, Defendants reside and/or operate in the People's Republic of China or other foreign jurisdictions with lax trademark enforcement systems, or redistribute products from the same or similar

sources in those locations. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

26. On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto. Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for LS&Co. to discover Defendants' true identities and the exact interworking of their counterfeit network. If Defendants provide additional credible information regarding their identities, LS&Co. will take appropriate steps to amend the Complaint.

## IV. DEFENDANTS' UNLAWFUL CONDUCT

27. The success of the LEVI'S® brand has resulted in its significant counterfeiting. Consequently, LS&Co. has a worldwide anti-counterfeiting program and regularly investigates suspicious e-commerce stores identified in proactive Internet sweeps and reported by consumers. In recent years, LS&Co. has identified numerous fully interactive e-commerce stores, including those operating under the Seller Aliases, that were offering for sale and/or selling Counterfeit Levi's Products to consumers in this Judicial District and throughout the United States. E-commerce sales, including through e-commerce stores like those of Defendants, have resulted in a sharp increase in the shipment of unauthorized products into the United States. **Exhibit 2**, Excerpts from Fiscal Year 2018 U.S. Customs and Border Protection ("CBP") Intellectual Property Seizure Statistics Report. Over 90% of all CBP intellectual property seizures were smaller international mail and express shipments (as opposed to large shipping containers). *Id*. Over 85% of CBP seizures originated from mainland China and Hong Kong. *Id*. Counterfeit and pirated products account for billions in economic losses, resulting in tens of thousands of lost jobs for legitimate businesses and broader economic losses, including lost tax revenue.

28.    Third party service providers like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms."  **Exhibit 3**, Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 NW. J. INT'L L. & BUS. 157, 186 (2020); *see also*, report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020), attached as **Exhibit 4** and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and recommending that "[s]ignificantly enhanced vetting of third-party sellers" is necessary.  Counterfeiters hedge against the risk of being caught and having their websites taken down from an e-commerce platform by preemptively establishing multiple virtual store-fronts.  **Exhibit 4** at p. 22.  Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, counterfeiters can have many different profiles that can appear unrelated even though they are commonly owned and operated.  **Exhibit 4** at p. 39.  Further, "E-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters." **Exhibit 3** at 186-187.

29.    Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, have sold Counterfeit Levi's Products to residents of Illinois.

30.    Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies.  For example, Defendants facilitate sales by designing the

e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. E-commerce stores operating under the Seller Aliases look sophisticated and accept payment in U.S. dollars via credit cards, Alipay, Amazon Pay, Western Union, and/or PayPal. E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer. LS&Co. has not licensed or authorized Defendants to use any of the LEVI'S Trademarks, and none of the Defendants are authorized retailers of LEVI'S® brand products.

31. Many Defendants also deceive unknowing consumers by using the LEVI'S Trademarks without authorization within the content, text, and/or meta tags of their e-commerce stores in order to attract various search engines crawling the Internet looking for websites relevant to consumer searches for LEVI'S® brand products. Other e-commerce stores operating under Seller Aliases omit using the LEVI'S Trademarks in the item title to evade enforcement efforts while using strategic item titles and descriptions that will trigger their listings when consumers are searching for LEVI'S® brand products.

32. On information and belief, Defendants have engaged in fraudulent conduct when registering the Seller Aliases by providing false, misleading and/or incomplete information to e-commerce platforms. On information and belief, certain Defendants have anonymously registered and maintained Seller Aliases to prevent discovery of their true identities and the scope of their e-commerce operation.

33. On information and belief, Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Counterfeit Levi's Products. Such seller alias registration patterns are one of many common tactics used by the Defendants to conceal

their identities and the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

34.     Even though Defendants operate under multiple fictitious aliases, the e-commerce stores operating under the Seller Aliases often share unique identifiers, such as templates with common design elements that intentionally omit any contact information or other information for identifying Defendants or other Seller Aliases they operate or use.  E-commerce stores operating under the Seller Aliases include other notable common features, such as use of the same registration patterns, accepted payment methods, check-out methods, keywords, illegitimate search engine optimization (SEO), advertising tactics, similarities in price and quantities, the same incorrect grammar and misspellings, and/or the use of the same text and images. Additionally, Counterfeit Levi's Products for sale by the Seller Aliases bear similar irregularities and indicia of being counterfeit to one another, suggesting that the Counterfeit Levi's Products were manufactured by and come from a common source and that Defendants are interrelated.

35.     On information and belief, Defendants are in constant communication with each other and regularly participate in QQ.com chat rooms and through websites such as sellerdefense.cn, kaidianyo.com and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

36.     Further, counterfeiters such as Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operation in spite of LS&Co.'s enforcement efforts.  On information and belief, Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts to off-shore bank accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to LS&Co. Indeed, analysis of financial account transaction logs from previous similar cases indicates that

off-shore counterfeiters regularly move funds from U.S.-based financial accounts to offshore bank accounts outside the jurisdiction of this Court.

37.     On information and belief, Defendants are an interrelated group of counterfeiters working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Counterfeit Levi's Products in the same transaction, occurrence, or series of transactions or occurrences.  Defendants, without any authorization or license from LS&Co., have jointly and severally, knowingly and willfully used and continue to use the LEVI'S Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit Levi's Products into the United States and Illinois over the Internet.

38.     Defendants' unauthorized use of the LEVI'S Trademarks in connection with the advertising, distribution, offering for sale, and sale of Counterfeit Levi's Products, including the sale of Counterfeit Levi's Products into the United States, including Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming LS&Co.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

39.     LS&Co. hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

40.     This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered LEVI'S Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods.  The LEVI'S Trademarks are highly distinctive marks.  Consumers have come to expect the highest quality from LEVI'S® brand products sold or marketed under the LEVI'S Trademarks.

41.     Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of the LEVI'S Trademarks without LS&Co.'s permission.

42.     LS&Co. is the exclusive owner of the LEVI'S Trademarks.  LS&Co.'s United States Registrations for the LEVI'S Trademarks (Exhibit 1) are in full force and effect.  On information and belief, Defendants have knowledge of LS&Co.'s rights in the LEVI'S Trademarks, and are willfully infringing and intentionally using counterfeits of the LEVI'S Trademarks.  Defendants' willful, intentional and unauthorized use of the LEVI'S Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Counterfeit Levi's Products among the general public.

43.     Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

44.     LS&Co. has no adequate remedy at law, and if Defendants' actions are not enjoined, LS&Co. will continue to suffer irreparable harm to its reputation and the goodwill of its well-known LEVI'S Trademarks.

45.     The injuries and damages sustained by LS&Co. have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Counterfeit Levi's Products.

**COUNT II**
**FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))**

46.     LS&Co. hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

47.     Defendants' promotion, marketing, offering for sale, and sale of Counterfeit Levi's Products has created and is creating a likelihood of confusion, mistake, and deception

18

among the general public as to the affiliation, connection, or association with LS&Co. or the origin, sponsorship, or approval of Defendants' Counterfeit Levi's Products by LS&Co.

48.     By using the LEVI'S Trademarks in connection with the sale of Counterfeit Levi's Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit Levi's Products.

49.     Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit Levi's Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

50.     LS&Co. has no adequate remedy at law and, if Defendants' actions are not enjoined, LS&Co. will continue to suffer irreparable harm to its reputation and the goodwill of its LEVI'S® brand.

**PRAYER FOR RELIEF**

WHEREFORE, LS&Co. prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

    a.  using the LEVI'S Trademarks or any reproductions, counterfeit copies or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine LEVI'S® brand product or is not authorized by LS&Co. to be sold in connection with the LEVI'S Trademarks;

b. passing off, inducing, or enabling others to sell or pass off any product as a genuine LEVI'S® brand product or any other product produced by LS&Co., that is not LS&Co.'s or not produced under the authorization, control, or supervision of LS&Co. and approved by LS&Co. for sale under the LEVI'S Trademarks;

c. committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Levi's Products are those sold under the authorization, control or supervision of LS&Co., or are sponsored by, approved by, or otherwise connected with LS&Co.;

d. further infringing the LEVI'S Trademarks and damaging LS&Co.'s goodwill; and

e. manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for LS&Co., nor authorized by LS&Co. to be sold or offered for sale, and which bear any of LS&Co.'s trademarks, including the LEVI'S Trademarks, or any reproductions, counterfeit copies or colorable imitations thereof;

2) Entry of an Order that, upon LS&Co.'s request, those with notice of the injunction, including, without limitation, any online marketplace platforms such as eBay, AliExpress, Alibaba, Amazon, Wish.com, and Dhgate (collectively, the "Third Party Providers") shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the LEVI'S Trademarks;

3) That Defendants account for and pay to LS&Co. all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for

infringement of the LEVI'S Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

4) In the alternative, that LS&Co. be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the LEVI'S Trademarks;

5) That LS&Co. be awarded its reasonable attorneys' fees and costs; and

6) Award any and all other relief that this Court deems just and proper.

Dated this 27th day of July 2020.                    Respectfully submitted,


/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
RiKaleigh C. Johnson
Martin F. Trainor
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080 / 312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
rjohnson@gbc.law
mtrainor@gbc.law

*Counsel for Plaintiff Levi Strauss & Co.*